**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KINSALE INSURANCE COMPANY,

Plaintiff

v.

BLACKBRIAR PROTECTIVE SERVICES, LLC, et al.,

Defendants

Case No.: 2:25-cv-01651-APG-NJK

**Order Granting Plaintiff's Motion for Summary Judgment**

[ECF No. 66]

Defendant Jorge Abarca filed a lawsuit in state court against defendants Cory Nash and Blackbriar Protective Services, LLC based on allegations that Nash, who was working as a security guard for Blackbriar, verbally assaulted Abarca, attempted to remove Arbaca from a parking lot, drew his gun at Abarca, and shot him in the legs as he attempted to flee. Blackbriar was insured under a policy issued by plaintiff Kinsale Insurance Company, and Blackbriar tendered the claim to Kinsale. Kinsale disclaimed coverage for the underlying suit based on various policy exclusions. The property owner that had hired Blackbriar to provide security services at the property where the incident occurred obtained a judgment against Blackbriar for $50,000. The property owner assigned its judgment against Blackbriar to Abarca, and Abarca then demanded Kinsale pay the judgment. Abarca and Blackbriar entered into a stipulated judgment against Blackbriar in the amount of $500,000, which Abarca also demanded Kinsale to pay.

Kinsale brought this suit seeking declarations that it owed no duty to defend or indemnify Nash or Blackbriar in the underlying state court case. Blackbriar counterclaimed against Kinsale

but later stipulated to dismiss the counterclaims.[1] ECF Nos. 12; 62. Kinsale also reached a resolution with Nash. ECF No. 75. Accordingly, the only remaining dispute is whether Kinsale owed a duty to defend and indemnify Blackbriar under the policy such that it must pay Abarca's demands.

Kinsale moves for summary judgment, arguing that it owed no duty to defend or indemnify Nash or Blackbriar under the insurance policy for three reasons. First, it argues that Nash's intentional shooting of Abarca does not constitute an occurrence under the policy because the shooting was not an accident. Second, Kinsale argues that the policy's Assault and Battery Exclusion bars coverage of all claims arising out of Nash shooting Abarca, including Abarca's claims for negligent hiring, training, and supervision. Finally, Kinsale argues that the policy's Expected/Intended Injury Exclusion also bars coverage because Nash's conduct was intentional.

Blackbriar responds that the policy does not define what constitutes an accident, and the Supreme Court of Nevada has defined an accident as "a happening that is not expected, foreseen, or intended." *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004). Blackbriar asserts that the incident was unexpected, and thus an accident, because Abarca could not have anticipated Nash would shoot him. Blackbriar argues that the Assault and Battery exclusion does not apply because the parties do not know Nash's mental state when he shot Abarca, as the parties have no testimony from Nash. Blackbriar also contends that the policy does not exclude coverage for the negligent acts of Blackbriar or its employees, and a reasonable jury could find under the facts in this case that Kinsale owes a duty to defend and indemnify for the negligent hiring and retention claims. Finally, Blackbriar contends that the Expected/Intended Injury

[1] Blackbriar also filed third-party complaints against other parties, but those claims were dismissed by stipulation. ECF Nos. 45, 50, 70.

Exclusion is ambiguous because it does not specify whether it applies to an employee's intentional acts that the insured employer did not authorize.

I grant Kinsale's summary judgment motion because the Assault and Battery Exclusion unambiguously excludes coverage for all the claims Abarca asserted against Blackbriar in the underlying lawsuit.

**I. Analysis**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

"Under an insurance policy, the insurer owes two contractual duties to the insured: the duty to defend and the duty to indemnify." *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 628 (Nev. 2021) (en banc). The duty to defend is broader than the duty to

indemnify and is triggered "whenever [the insurer] ascertains facts which give rise to the potential of liability under the policy." *Id.* (quotation omitted). But "there is no duty to defend where there is no potential for coverage." *Id.* at 629 (simplified). A potential for coverage exists only "when there is arguable or possible coverage." *Id.* (quotation omitted). All doubts about whether the duty to defend has been triggered must be resolved in the insured's favor. *Id.*

Under Nevada law, I "interpret an insurance policy from the perspective of one not trained in law or in insurance." *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (en banc) (quotation omitted). "If a provision in an insurance contract is unambiguous," I "interpret and enforce it according to the plain and ordinary meaning of its terms." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). An insurance policy is ambiguous if it "creates [multiple] reasonable expectations of coverage as drafted." *Id.* (quotation omitted). I interpret ambiguities against the drafter. *Id.* I interpret clauses providing coverage "broadly so as to afford the greatest possible coverage to the insured," and I interpret clauses excluding coverage "narrowly against the insurer." *Id.* (quotation omitted).

"Any exclusion must be narrowly tailored so that it clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered." *Century*, 329 P.3d at 616 (quotation omitted). To exclude coverage, the insurer thus must "(1) draft the exclusion in obvious and unambiguous language, (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court." *Id.* (quotation omitted).

I "consider the policy as a whole to give reasonable and harmonious meaning to the entire policy." *Id.* (quotation omitted). I should not interpret the contract in a way that leads to

an absurd or unreasonable result. *Reno Club, Inc. v. Young Inv. Co.*, 182 P.2d 1011, 1017 (Nev. 1947).

The insured bears the burden of establishing coverage under the insurance policy for both the duty to indemnify and duty to defend. *Zurich*, 497 P.3d at 630. The insurer bears the burden of showing that an exception precludes coverage. *Nat'l Auto. & Cas. Ins. Co. v. Havas*, 339 P.2d 767, 768 (Nev. 1959).

The policy's Assault and Battery Exclusion states:

> This insurance does not apply to any claim or suit for bodily injury, property damage or personal and advertising injury arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:
>
> 1. The prevention or suppression or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;
> 2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;
> 3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;
> 4. Injury or damage committed while using reasonable force to protect persons or property acting in self defense;
> 5. The reporting or failing to report to the proper authorities;
> 6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;
> 7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;
> 8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrols, customers, or any other person arising from any causes whatsoever; or
> 9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

ECF No. 9 at 5.

This language is obvious and unambiguous, and no genuine dispute remains that Abarca's suit implicates this exclusion. Abarca alleged that after he entered a parking lot, Nash "approached and harassed" him, "verbally assaulted [him] and physically was attempting to move [Abarca] to leave the parking lot." ECF No. 9-1 at 5. Abarca "in fear, swung around and threw his skateboard at Defendant Nash. Defendant Nash drew his gun and [proceeded] to shoot Plaintiff, who was turned away from Defendant and running, in the left and right leg." *Id.* Based on these allegations, Abarca asserted claims for negligence; negligent hiring, training, supervision and/or retention; gross negligence; negligence per se; vicarious liability; and declaratory or injunctive relief. *Id.* at 7-13. Each of those claims arises out of or relates to Nash's harmful or offensive contact with Abarca and thus are excluded from coverage. *See Hernandez v. First Fin. Ins. Co.*, 802 P.2d 1278, 1279-80 (Nev. 1990) (holding that a policy excluding injury "arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts" "unambiguously includes both damages arising from the assault and battery itself and negligent hiring, training or supervision" (simplified)); *Town Square Las Vegas, LLC v. Hudson Specialty Ins. Co.*, No. 2:21-cv-00027-APG-NJK, 2022 WL 943366, at *4 (D. Nev. Mar. 28, 2022) (holding that the policy "unambiguously excludes coverage for bodily injury arising out of a battery, whether caused by affirmative acts or omissions by [the employer] and its employees," which precluded coverage for a negligent hiring, training, retention, and supervision claim).

Blackbriar's contention that a genuine dispute remains because there is no evidence of Nash's state of mind does not change this result. Abarca alleged Nash drew his gun and shot Abarca. Discovery is closed, and Blackbriar presents no evidence to raise a genuine dispute that Nash did not intentionally shoot Abarca. Even viewing the facts in the light most favorable to

Blackbriar, there is no other "viable interpretation of what occurred" except that Nash intentionally drew his gun and shot Abarca. *United Specialty Ins. Co. v. Hachiman, LLC*, No. 2:16-cv-02784-APG-CWF, 2018 WL 2245057, at *3 (D. Nev. Feb. 15, 2018) (granting summary judgment where the defendants could "point to no evidence showing another viable interpretation of what occurred beyond bare statements" and "produced no evidence showing such a lack of intent"). But Nash's intent is irrelevant under the policy language anyway. The Assault and Battery Exclusion excludes from coverage any harmful or offensive contact, including when used in self defense and even if the employer or its agents were negligent. And it specifically excludes the failure to provide a safe environment, the failure to warn, and the negligent hiring, training, supervision, or retention of an employee. Because no genuine dispute remains that Kinsale owed no duty to defend or indemnify Blackbriar or Nash under the policy's Assault and Battery Exclusion, I need not address the parties' other arguments. I grant summary judgment in Kinsale's favor.

## II. Conclusion

I THEREFORE ORDER that plaintiff Kinsale Insurance Company's motion for summary judgment **(ECF No. 66) is GRANTED**. The clerk of court is instructed to enter judgment in favor of Kinsale Insurance Company and against defendants Blackbriar Protective Services, LLC and Jorge Abarca, and to close this case.

DATED this 29th day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE